```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-7-07
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------- X
MARIA DO ROSÁRIO VEIGA,            :
                                   :
                Plaintiff,         :
                                   :
                                   :    07 CIV 3182(VM)
                                   :
        - against -                :
                                   :    **DECISION AND ORDER**
WORLD METEOROLOGICAL ORGANISATION  :
et al.,                            :
                Defendants.        :
---------------------------------X

**VICTOR MARRERO, United States District Judge.**

    Plaintiff Maria Do Rosário Veiga ("Veiga"), a citizen of

Portugal and Italy, brought this action naming as defendants

her former employer, the World Meteorological Organisation

("WMO"), an international organization headquartered in

Geneva, Switzerland, as well as Michel Jarraud ("Jarraud"), a

French national, who is a Secretary General of the WMO and a

resident of Switzerland; Joachim Muller ("Muller"), a German

national, who is a Director of the WMO and a resident of

Switzerland; Jorge Cortès ("Cortès"), an American national who

is a Director of the WMO and a resident of Switzerland; and

Iwona Rummel-Bulska ("Rummel-Bulska"), a Polish national who

is a former legal advisor of the WMO and now a resident of

Nairobi, Kenya (collectively "Defendants"). Because on its

face the complaint indicates that all material events and

operative facts that gave rise to the action occurred at the

WMO in Geneva, that the parties, witnesses, and documents

associated with the case are situated primarily in Switzerland, and that Veiga's substantive claims for relief are grounded on various instruments of international law, as well as local and federal law of Switzerland and the United States, the Court directed Veiga to show cause why this action should not be dismissed under the doctrine of forum non conveniens.  Veiga responded by letter, urging the Court to permit the litigation of the case in this District.  The Court finds no merit in any of Veiga's arguments, nor any other compelling ground supporting the continuation of this action here.  Accordingly, for the reasons stated below, the Court dismisses this action pursuant to the doctrine of forum non conveniens.

## I.  **FACTS**

Veiga asserts that she currently resides in Portugal, and that she was employed by the WMO as Chief of Internal Audit and Investigation Service at the organization's headquarters in Geneva, Switzerland for three years, until her alleged wrongful termination in November 2006.  In that capacity, she was assigned to investigate certain allegations of fraud and embezzlement of WMO funds.  She states that an investigation she conducted revealed an unlawful scheme involving over $3.5 million of WMO funds that were used improperly to influence the 2003 election for WMO Secretary General, which resulted in

the selection of Jarraud.  The results of that investigation were turned over to Swiss criminal justice authorities.

According to Veiga, at a meeting of the WMO Audit Committee in February 2005, she was instructed by Jarraud and the Committee to close her internal investigation by March 2005, allegedly because Veiga was close to revealing the connection of Jarraud to the fraudulent use of WMO funds. Veiga asserts that as a consequence of her work and the information about the alleged misconduct she acquired in connection with this matter, she was subjected by Jarraud, Muller, Rummel-Bulska, and Cortès to various acts of intimidation, harassment, threats, diminution of job responsibilities, and eventually to retaliatory termination of her employment by the WMO in November 2006, allegedly on false grounds of misconduct on her part.

Veiga pleads several common law causes of action, specifically breach of contract, wrongful termination, intentional interference with a contractual relationship, breach of covenant of good faith and fair dealing, intentional infliction of emotional distress, defamation, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. As grounds for the Court's exercise of authority to adjudicate this action, she invokes the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350 and federal

-3-

question jurisdiction under 28 U.S.C. § 1331. As substantive bases of relief, she cites various sources of international law and Swiss laws, as well as federal and New York state law.

## II.  DISCUSSION

As a threshold matter, the Court is guided in its ruling on this matter by a statement of the Second Circuit noting that "the Supreme Court observed that the doctrine of forum non conveniens 'leaves much to the discretion of the court'... and the cases ... confirm that the discretion is wide." Schertenleib v. Traum, 589 F.2d 1156, 1164 (2d Cir. 1978) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947); The Circuit Court has further elaborated that the doctrine is based on the principle that "'a court may resist imposition upon its jurisdiction even when jurisdiction is authorized ....'" Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (quoting Gilbert, 330 U.S. at 507); see also Royal Indus. v. Kraft Foods Inc., 926 F. Supp. 407, 415 (S.D.N.Y. 1996) ("Dismissal of a case on forum non conveniens grounds is discretionary and should only be granted 'when trial in the chosen forum would "establish ... oppressiveness and vexation to a defendant ... out of proportion to plaintiff's convenience" or when "the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems."' "(quoting

-4-

Piper Aircraft   v. Reyno, 454 U.S. 235, 241 (1981) (quoting
Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947)).

Courts in this Circuit employ a three-part test to
analyze the application of the forum non conveniens doctrine.
See Iragorri v. United Techs. Corp., 274 F.3d 65, 73-74 (2d
Cir. 2001) (en banc); see also Norex Petroleum, 416 F.3d at
153.  Initially, the court determines the degree of deference
that should be accorded to the plaintiff's choice of forum.
Second, the court considers whether there exists an available
and adequate alternative forum where the dispute could be
adjudicated.  See Gilbert, 330 U.S. at 506-07; Piper Aircraft,
454 U.S. at 254 n.22.   This inquiry consists of two parts:
availability and adequacy.   Ordinarily, the availability
requirement is met if the defendant is amenable to process in
the alternative forum.  See Gilbert, 330 U.S. at 507 (noting
that the doctrine "presupposes at least two forums in which
the defendant is amenable to process"); see also Piper
Aircraft, 454 U.S. at 254 n.22.  The adequacy test addresses
the sufficiency of the alternative forum as a source of
remedies for the wrongs the plaintiff claims.   See Piper
Aircraft, 454 U.S. at 254 (noting that dismissal may not be in
the interest of justice "if the remedy provided by the
alternative forum is so clearly inadequate or unsatisfactory
that it is no remedy at all").

Finally, if the preceding standards are met, the court assesses the appropriateness of litigating the action in the plaintiff's choice of forum, as opposed to the alternative venue, by balancing the private interests of the litigants and the public interest concerns of the court in accordance with the factors articulated by the Supreme Court in Gilbert.  See Gilbert, 330 U.S. at 508-09; In re Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488, 500 (2d Cir. 2002); Turedi v. Coca Cola Co., 460 F. Supp. 2d 507, 521 (S.D.N.Y. 2006); Corporacion Tim, S.A. v. Schumacher, 418 F. Supp. 2d 529, 531-32 (S.D.N.Y. 2006), aff'd, 2007 WL 1120376 (2d Cir. Apr. 17, 2007).  The inquiry probes whether, in the interest of justice and all other relevant concerns, the action would best be brought in another venue.

A.  DEFERENCE TO PLAINTIFF'S CHOICE OF FORUM

Generally, there is a strong presumption in favor of the plaintiff's choice of forum.  See Piper Aircraft, 454 U.S. at 250; DiRienzo v. Philip Svcs. Corp., 294 F.3d 21, 28 (2d Cir. 2002); Iragorri, 274 F.3d at 70-71.  In consequence, this presumption may be overcome by a showing that on balance the Gilbert private and public interest factors "tilt strongly in favor" of the alternative forum.  Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 100 (2d Cir. 2000); see also Piper Aircraft, 454 U.S. at 255-56; Gilbert, 330 U.S. at 508

-6-

(instructing that "unless the balance is strongly in favor of
the defendant, the plaintiff's choice of forum should rarely
be disturbed"); Iragorri, 274 F.3d at 72-73.  Deference to the
plaintiff's forum becomes a stronger consideration where the
plaintiff is an American citizen, especially in cases in which
the underlying claims arose under United States law or seek to
enforce or promote significant American policy interests.  See
Piper Aircraft, 454 U.S. at 256 (emphasizing that this rule is
not intended to disadvantage foreign plaintiffs but rather
reflects a realistic prediction of the ultimate convenience of
the forum); DiRienzo, 294 F.3d at 31.

However, where the circumstances indicate that the
parties and material events bear no bona fide connection to
the United States, or that in relation to the core operative
facts in dispute the parties and events at best have only
marginal links to the plaintiff's chosen venue, that choice of
forum is not entitled to special deference, in particular
where the claimants are all foreign residents.  See Piper
Aircraft, 454 U.S. at 256; Iragorri, 274 F.3d at 71; Turedi,
460 F. Supp. 2d at 523.  Weighed in this analysis is a
sliding-scale consideration of whether forum-shopping reasons
may have served as a motivation in the plaintiff's chosen
venue.  See Iragorri, 274 F.3d at 72 ("[T]he more it appears
that the plaintiff's choice of a U.S. forum was motivated by

-7-

forum-shopping reasons . . . the less deference the
plaintiff's choice commands and, consequently, the easier it
becomes for the defendant to succeed on a forum non conveniens
motion by showing that convenience would be better served by
litigating in another country's courts.").

Here, Veiga asserts that she is a citizen of Portugal and
Italy, now residing in Portugal.  Her former employer, the
WMO, is an international organization headquartered in Geneva,
Switzerland. Other than the WMO's association as one of the
specialized agencies of the United Nations, whose headquarters
are in New York, Veiga points to no other material connection
with the United States by the WMO, the individual defendants,
or the actions and alleged injuries at issue here.   The
underlying claims asserted by Veiga stem from the alleged
wrongful termination of her employment and other unlawful
actions by Defendants arising from her investigation of
misconduct at the WMO in Geneva.  Veiga pleads no facts
bearing on how the events that occurred or the claims for
relief she asserts suggest even a remote contact of the
persons involved or their relevant conduct with the United
States, nor any substantial effect of the underlying actions
on the United States or American policy.  These facts give
rise to a strong inference that forum-shopping considerations
served as a substantial motivation in Veiga's choice of venue

in this District.   See Gilbert, 330 U.S. at 507 ("A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.").

In response, Veiga points out that the WMO is part of the United Nations system whose employees belong to the Joint Staff Pension Fund and whose budget and activities are reviewed and coordinated by the United Nations General Assembly in New York, and that the attorneys assigned to defend this action are likely to be based in New York.   The Court finds these arguments less than persuasive, indeed entirely ungermane to the applicable standards guiding forum non conveniens analysis.

Nor are the concerns described above mitigated by Veiga's assertion of claims under international law.   See Aguinda v. Texaco, Inc., 142 F. Supp. 2d 534, 553 (S.D.N.Y. 2001), aff'd, 303 F.3d 470 (2d Cir. 2002) ("The United States ... has no special public interest, under the [ATS] or otherwise, in providing a forum for plaintiffs pursuing an international law action ... that plaintiffs can adequately pursue in the place where the violation actually occurred."). For these reasons the Court concludes that Veiga's choice of forum is not entitled to deference.

B.   ADEQUATE ALTERNATIVE FORUM

-9-

As stated above, the adequate alternative forum requirement of the forum non conveniens doctrine is ordinarily satisfied if (1) the other forum is available because the defendant is amenable to service of process there, and (2) the forum permits litigation of the subject matter of the dispute and offers remedies for the wrongs the plaintiff alleges, even if the causes of action and relief provided there are not identical in every respect to the claims the plaintiff demands or redress he seeks in his chosen forum.  See Monegasque, 311 F.3d at 499 (citing Piper Aircraft, 454 U.S. at 254 n.22); Capital Currency Exch. v. National Westminster Bank PLC, 155 F.3d 603, 610 (2d Cir. 1998).  The proffered alternative forum may be inadequate, for example, where the plaintiff demonstrates that he would encounter exceptional legal, political, or practical barriers in litigating in the other forum, such as the prospect of execution or a justice system closed to him as a member of an outcast class.  See, e.g., Rasoulzadeh v. Associated Press, 574 F. Supp. 854, 860 (S.D.N.Y. 1983), aff'd, 767 F.2d 908 (2d Cir. 1985); see also Menendez Rodriguez v. Pan Am. Life Ins. Co., 311 F.2d 429, 433 (5th Cir. 1972), vacated on other grounds, 376 U.S. 779 (1964).

The Court notes that the WMO, as an international organization headquartered in Geneva, and the individual

-10-

defendants, as WMO officials who reside in Switzerland or there committed the wrongs Veiga asserts, are amenable to process in Switzerland insofar as authorized by applicable Swiss law. Upon application by Veiga, the Court will consider placing a condition this dismissal on an express agreement by Defendants not to challenge the appropriateness of Geneva as a convenient forum for resolution of the claims of misconduct alleged in this action and of any available defenses. See Aguinda v. Texaco, Inc., 303 F.3d 470, 476-77 (2d Cir. 2002) (alternative forum requirement generally satisfied by defendant's consent to the exercise of jurisdiction of the foreign action).

With regard to the second requirement, "[a]n alternative forum is ordinarily adequate if the defendants are amenable to service of process there and the forum permits litigation of the subject matter of the dispute." Monegasque, 311 F.3d at 499. Conversely, a forum may be deemed inadequate if it is "characterized by a complete absence of due process or an inability of the forum to provide substantial justice to the parties." Id.

In this connection, the Court notes that in the context of forum non conveniens inquiries, courts in this Circuit have repeatedly found that Switzerland is an adequate forum for adjudication of civil disputes involving common law claims

-11-

based on contract and tort principles sufficiently similar to those at issue here.  See, e.g., Schertenleib, 589 F.2d at 1159-60; Fustok v. Banque Populaire Suisse, 546 F. Supp. 506, 511 (S.D.N.Y. 1982); cf. Calgarth Invest. Ltd. v. Bank Saderat Iran, 1996 WL 204470 (S.D.N.Y. Apr. 26, 1996).

Veiga does not assert that Swiss law does not provide remedies for the elemental breach of contract and tort claims she raises here.  Rather, she rejects Switzerland as an adequate forum on the ground that it "operates under a civil law jurisdiction and does not have the same constitutional protections afforded by the US legal system, nor does it have a record of providing vindication of important individual rights as do US courts...." (Letter from Monika Ona Bileris and Edward Patrick Flaherty to Honorable Victor Marrero, dated April 30, 2007 ("Pl.'s Letter"), at 2.)  These vague generalizations do not address the fundamental question as to the availability of sufficiently comparable common law causes of actions and protections under Swiss law that recognize similar wrongs and liability and would provide suitable remedies were Veiga's claims to proceed to adjudication on the merits, nor do they indicate what bearing American "constitutional protections" have to this foreign action between foreign parties entailing events that occurred in a foreign country.  Moreover, the Second Circuit repeatedly has

-12-

cautioned against judges giving serious consideration to such conclusory attacks on the judicial systems of foreign jurisdictions, underscoring the concerns that censures of this kind raise if endorsed by our courts, especially when based on bare aspersions and expansive generalizations. See Monegasque, 311 F.3d at 499 (citing Blanco v. Banco Indus. de Venezuela, S.A., 977 F.2d 974, 981-82 (2d Cir. 1993)); Jhirad v. Ferrandina, 536 F.2d 478, 484-85 (2d Cir. 1976).

Veiga's contention that Swiss law does not contain provisions allowing causes of actions or remedies precisely equivalent to those she asserts in the instant action is similarly insufficient to bar a finding that an adequate forum exists. As the Supreme Court observed in Piper Aircraft: "'The possibility of a change in substantive law ordinarily should not be given conclusive or even substantial weight in the forum non conveniens inquiry." 454 U.S. at 247; see also PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 74 (2d Cir. 1998) (noting that the non-existence of a RICO statute in the proposed alternate venue does not bar the use of that forum) (citing Transunion Corp. v. Pepsi Co. Inc., 811 F.2d 127 (2d Cir. 1987)); Capital Currency, 155 F.3d at 610; Turedi, 460 F. Supp. 2d at 525-26.

Veiga's conclusory contention that this action could not be maintained in Switzerland by reason of the WMO's

-13-

Headquarters Agreement granting absolute immunity to the WMO and its officials from civil litigation is no more availing. If maintained in this district, the Court would be obliged under New York choice of laws rules to adopt "an 'interest analysis' which requires that ... 'the law of the jurisdiction having the greatest interest in the litigation ... be applied.'" Kalb, Voorhis & Co. v. American Fin. Corp., 8 F.3d 130, 132 (2d Cir. 1993) (quoting Intercontinental Planning, Ltd. v. Daystrom, Inc., 248 N.E. 2d 576, 582 (N.Y. 1969); AroChem Int'l v. Buirkle, 968 F.2d 266, 269-70 (2d Cir. 1992). The same analysis and result would prevail in United States courts under application of conflict of laws principles involving foreign disputes or international law. See Restatement (Second) of Conflict of Laws §§ 10, 83 (1971).

There can be no dispute that under this standard Switzerland -- the jurisdiction in which the alleged wrongs occurred, where the parties resided at all relevant times, and whose law enforcement authorities have been investigating possible violations of Swiss laws arising from the circumstances Veiga describes -- has the greatest interest in the application of its laws to the adjudicate of the charges of misconduct allegedly committed by its residents within its borders that are at issue here. Thus, in any litigation of this matter in this Court, governing Swiss law is likely to

-14-

control and conceivably apply to bar the litigation to no lesser degree than if the action were brought in Geneva. In this regard, it better serves the interest of judicial economy and the administration of justice for a ruling on the meaning of the WMO's Headquarters Agreement and its effect on this action, as well as related questions of the scope of any immunity from civil suits that extends to the WMO and its officials under that Agreement and applicable Swiss law, to be determined by Swiss authorities rather than by this Court. See Gilbert, 330 U.S. at 509 (noting that a case should be tried "in a forum that is at home with the ...law that must govern the case, rather than having court in some other forum untangle problems in conflict of laws, on in law foreign to itself.") Such determinations presumably could include the question Veiga suggests here as to whether, even if a lawsuit against Defendants could not be maintained in Switzerland under the terms of the Headquarters Agreement and Swiss law, such litigation to redress the alleged misconduct at issue in this case nonetheless would not be precluded in other jurisdictions.

Finally, the Court notes that the Court can address any valid concerns Veiga may have regarding Switzerland as an adequate forum by placing appropriate conditions on this dismissal, as further considered below. See Schertenleib, 589

-15-

F.2d at 1163 ("Thus further inquiry into foreign jurisdictional law really is needless since it is so easily obviated by use of the typical conditional dismissal device."

Accordingly, the Court finds that Switzerland would provide an adequate forum for the adjudication of this litigation.

## C.   THE GILBERT FACTORS

Under the forum non conveniens doctrine, upon finding that no special deference to the plaintiff's choice of forum is warranted, and that an adequate alternative forum does exist, the Court must then determine, by balancing the private interests of the litigants with the public interest concerns of the Court, whether adjudication of the action in plaintiff's chosen forum would be inconvenient and unjust. See Gilbert, 330 U.S. at 508-09.

### 1.   The Private Interest Factors

The private interests of the litigants that the Court must consider under the Gilbert analysis are: (a) the ease of access to evidence; (b) the availability of compulsory process; (c) the cost for cooperative witnesses to attend trial; (d) the enforceability of a judgment; and (e) all other practical matters that might shorten any trial or make it less expensive.  See id. at 508.

In the instant case, these factors all weigh strongly in

-16-

favor of litigating the parties' dispute in Switzerland.  The wrongful conduct that Veiga alleges caused her injuries is fundamentally connected with actions and events that occurred primarily in Geneva over the course of three years.  To that extent, the entire factual record of the events most central to the action is located primarily in Switzerland.  Access to the many party and non-party witnesses whose testimony would be necessary, as well as related documentary evidence, is entirely in Switzerland, and thus beyond the reach of this Court's power to compel production.  Much of that evidence, both documentary and of live witnesses, would likely have to be translated for any effective use in proceedings in this Court.  The costs, inconvenience, and impracticalities of subjecting those witnesses to participate at trial in this District, even if voluntary, would be substantially higher relative to comparable costs and other burdens they would incur in Switzerland.  Even if some testimony of non-parties could be obtained and preserved by deposition, to do so would implicate proceedings under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, a prospect that entails significant amounts of time even in ordinary cases, and far more in complicated litigation such as this action.  In all probability, these circumstance would cause not only greater financial hardships, but significant delays

-17-

in preparing the case for trial before this Court, and ultimately in resolving the merits of the dispute.

Veiga's cursory response to these severe difficulties is that access to proof would be "relatively easy to secure" and that attendance in this district by unwilling witnesses "could be easily completed." (Pl.'s Letter, at 2.) These conclusory answers grossly understate the inconvenience and legal obstacles associated with litigation of this action here rather than in Switzerland.

As against the overwhelming dominant contacts of this action with Switzerland, Veiga points to nothing more than the WMO's affiliation with the United Nations as grounds for litigation in this district, and her unsubstantiated assertion that trial in this district is not outweighed by resolution in Switzerland because the case "will likely involve witnesses, documents and other evidence from several countries, not just the United States or Switzerland."  (Id. at 2.)  These arguments actually cut against Veiga's position and reinforce the Court's concerns. Veiga entirely ignores the inextricable connections of this action to the triggering events associated with WMO actions in Geneva, and treat lightly the overwhelming and fundamental contacts of this litigation with Switzerland. Whatever witnesses, events, and documents associated with relevant conduct may be found outside of Switzerland, the

-18-

point is that the connection of this action with the United
States is marginal at best in comparison to the magnitude of
the factual and legal links of all material aspects of the
dispute to Switzerland.    Thus, Switzerland is the more
convenient forum for the conduct of the bulk of pretrial
factual investigations, discovery and other proceedings that
are entailed in the litigation, and the United States would be
a far costlier and more inconvenient venue for witnesses and
parties to travel to for any subsequent trial.

2. The Public Interest Factors

The Gilbert public interest factors to be weighed by the
Court include: (a) administrative difficulties relating to
court congestion; (b) imposing jury duty on citizens of the
forum; (c) having local disputes settled locally; and (d)
avoiding problems associated with the application of foreign
law. See Gilbert, 330 U.S. at 508-09; Monegasque, 311 F.3d at
500.    These considerations also weigh heavily in favor of
dismissal of this action.

First, there is no indication that courts in the
Switzerland are any more congested than the busy courts in
this district.    Second, Veiga, though currently domiciled in
Portugal, resided in Switzerland at the time the events in
question occurred and it was there that she suffered the
injuries she claims.    Defendants are all residents of or based

-19-

in Switzerland. Because the core events, operative facts, and associated private and institutional interests at issue are local to Switzerland, the dispute should be resolved in that country. There is a significant interest in having localized matters decided in the local forum in accordance with domestic law governing the case.     See Gilbert, 330 U.S. at 509 (noting the "local interest in having localized controversies decided at home"); Monegasque, 311 F.3d at 500-01 (noting that "there is no reason why localized matters should not be determined by the courts of the locale bearing the most significant contacts with them").     In fact, Veiga points out that Swiss law enforcement and judicial authorities have been involved in investigations of the alleged misconduct at issue here. There is no indication in Veiga's complaint of any wrongful acts that may have been committed by Defendants in the United States that would override Switzerland's interest in exercising jurisdiction to adjudicate all aspects of this controversy. Moreover, as stated above, Swiss law would likely govern the duties, immunities, and liabilities of the WMO and its officials in this regard, and determinations of the reach of local law to these matters should be made by Swiss tribunals and not by this Court. See Gilbert, 330 U.S. at 509; Kalb, Voorhis, 8 F.3d at 132.

Consequently, because the bulk of Veiga's common law

claims would require application of principles of Swiss law,
Switzerland is the forum with the most significant legal
contacts with and the greatest jurisdictional interest in the
adjudication of the controversy before the Court.    Also for
these reasons, an action should be tried in a forum familiar
with the law governing the case.    See Gilbert, 330 U.S. at
508-09. By contrast, the Court finds no compelling reason why
the law and judicial resources of this forum should be applied
to resolve this dispute, nor any overriding American policy
interest that would be promoted or enforced by doing so.    See
Piper Aircraft, 454 U.S. at 260-61.

     To the circumstances compellingly tilting the public
interest factors towards Switzerland, Veiga responds by
pointing to a United States' interest in adjudicating alleged
violations of international law under the ATS.    For the
reasons already articulated above, the Court is not persuaded
that these considerations weigh in favor of maintaining this
action in this forum.    Whether or not the United States has
some interest, however tangential, in the adjudication of this
action in this Court is not the controlling question. Rather,
the real issue is whether, on balance, the nominal interests
of the United States identified by Veiga, a foreign citizen,
against Defendants, all foreign residents, outweigh those of
Switzerland in resolving charges of corruption and violations

of Swiss and international law by the WMO and its officials, who allegedly committed these offenses in Geneva.   This Court finds that the scale tilts strongly in favor of such adjudication occurring in Switzerland in this case.

The Court concludes that the links of this action with this district are minimal compared with the contacts of the controversy with Switzerland, and that the central dispute concerns Switzerland more than the United States.   Thus, the balance of the Gilbert private and public interest factors weigh heavily in favor of dismissal of this action.   However, upon application by Veiga on notice to Defendants, the Court would entertain imposing as a condition of dismissal that Defendants give express consent to certain conditions: that in the event Veiga commences litigation in Switzerland arising out of the circumstances and general claims asserted in this case, Defendants agree to accept service of process and to the exercise of personal jurisdiction by the relevant tribunal in Switzerland to the extent permissible by applicable law; that Defendants not assert any defenses based on statutes of limitations that would not available to them were this litigation prosecuted in this Court; and that Defendants would satisfy any final judgment rendered by a Swiss court in connection with any such litigation.   See  Aguinda, 303 F.3d at 480 (affirming forum non dismissal subject to modification

-22-

that the judgment be conditioned on defendant's agreement to waive statutes of limitations defenses); Blanco, 997 F.2d at 984 ("[F]orum non conveniens dismissals are often appropriately conditioned to protect the party opposing dismissal.") (collecting cases).[1]

### III.   ORDER

For the reasons stated above, it is hereby

**ORDERED** that the complaint in this action filed by plaintiff Maria do Rosário Veiga is dismissed on the grounds of forum non conveniens; and it is further

**ORDERED** that on application to the Court by Veiga filed within ten (10) days of this action, on notice to defendants herein, the Court will consider imposing conditions on this dismissal as set forth in the Court's decision above.

---

[1]  Conditional forum non conveniens dismissals are standard in the Second Circuit.  Such conditions, as is the case here, may be necessary to the forum non conveniens analysis itself, for such conditions create the adequate alternative forum.  The Second Circuit has found a forum non conveniens dismissal to be erroneous in the absence of a condition requiring the defendant to submit to jurisdiction in the alternative forum, since "[t]he forum non conveniens doctrine allows dismissal only where the court determines that 'an alternative forum is available, because application of the doctrine presupposes at least two forums in which the defendant is amenable to process.'"  Jota v. Texaco, Inc., 157 F.3d 153, 158-59 (2d Cir. 1998) (internal quotation and citation omitted). Moreover, where such condition consists of consenting to personal jurisdiction or waiving of statute of limitations defenses, the defendant merely "is asked to cede a personal defense that is waivable at its will." Gross v. British Broad. Corp., 386 F.3d 224, 234 (2d Cir. 2004).

The Clerk of Court is directed to close this case.


**SO ORDERED.**

DATED:      NEW YORK, NEW YORK
            7 May 2007


                                    _____
                                        Victor Marrero
                                          U.S.D.J.