|   |   |
|---|---|
| Maria do Rosario Veiga | ) |
| | ) |
| Plaintiff, | ) Docket No. 07 CV 3182 (VM) |
| | ) |
| v. | ) |
| | ) |
| World Meteorological Organisation, | ) |
| Michel Jarraud, | ) |
| Jorge Cortes, | ) |
| Joachim Miller, and | ) |
| Iwona Rummel-Bulska | ) |
| Defendants. | ) |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**FRCP Rule 59(e) Motion to Amend or Alter the Court's Order Entered 30 April 2007, As Supplemented by the Court's Decision and Order dated and filed 7 May 2007**

Now comes the Plaintiff in the above-entitled matter and respectfully moves this Honorable Court, pursuant to FRCP Rule 59(e), to amend or alter its order entered in this case on 30 April 2007, as supplemented by the Court's Decision and Order dated and filed 7 May 2007, *sua sponte*, without argument, which orders instructed the Clerk to dismiss this action and to close the case on the grounds of *forum non conveniens*. The Plaintiff respectfully requests that the Court, pursuant to its supplemental Decision and Order dated 7 May 2007, as detailed at page 22 of same, to order, as a condition of dismissal, that the Defendants give express consent to the following conditions, in the event the Plaintiff commences litigation in Switzerland arising out of the circumstances and general claims asserted in this case:

- That the Defendants agree to accept service of process and to the exercise of personal jurisdiction by the relevant tribunal in Switzerland to the extent permissible by applicable law;

- That the Defendants not assert any defenses based on statutes of limitations that would not [be] available to them were this litigation prosecuted in this Court; and

- That the Defendants would satisfy any final judgment rendered by a Swiss court in connection with any such litigation.

As the Plaintiff believes that pursuant to Articles 3, 6, 7, 15 and 16 of the Headquarters Agreement entered between the Defendant WMO and the Swiss Federal Council dated 10 March 1955 (Exhibit 1), Plaintiff will be precluded from bringing any civil action against any of the Defendants in any Swiss national court on account of the privileges and immunities granted to the Defendant WMO and its officials pursuant to said Agreement, notwithstanding the foregoing consents of the Defendants (confirmed by an affidavit from Plaintiff's Swiss counsel, asserting that the Plaintiff will be precluded from bringing and maintaining a civil action against the Defendants in Swiss national courts, attached hereto as Exhibit 2), the Plaintiff respectfully requests that this Honorable Court additionally condition its dismissal of the action on the acceptance of the relevant Swiss tribunal of an action brought by the Plaintiff against the Defendants arising out of the circumstances and general claims asserted in this case.

**Conclusion**

For all of the foregoing reasons, the Plaintiff respectfully requests this Honorable Court to amend and alter its order entered 30 April 2007, supplemented by a Decision and Order dated and filed

7 May 2007, making its dismissal order on grounds of *forum non conveniens* expressly subject to the conditions as above requested, without prejudice.

Respectfully submitted,

Monika Ona Bileris, Esq.
212 West 104 Street, 4D
New York, New York  10025
917-826-4588

Edward Patrick Flaherty, Esq.
Schwab, Flaherty, Hassberger, Crausaz & Associes
Case postale 510
CH-1211 Geneva 17, Switzerland
Tel.  4122 840 5000
Fax  4122 840 5055

Dated: May 10, 2007

## Certificate of Service

I, Monika Ona Bileris, hereby certify that I served this day a copy of the foregoing Motion to Amend or Alter upon all of the named Defendants by way of first class U.S. mail.

Dated: May 10, 2007

_____
Monika Ona Bileris, Esq.

Exhibit 1

# AGREEMENT BETWEEN
# THE SWISS FEDERAL COUNCIL
# AND
# THE WORLD METEOROLOGICAL ORGANIZATION

## TO GOVERN THE LEGAL STATUS OF THIS ORGANIZATION IN SWITZERLAND

The SWISS FEDERAL COUNCIL
on one hand,

THE WORLD METEOROLOGICAL ORGANIZATION
on the other,

being desirous of concluding an agreement with a view to governing the judicial status, in Switzerland, of the World Meteorological Organization, have agreed upon the following dispositions:

### ARTICLE 1

The Swiss Federal Council guarantees the World Meteorological Organization the independence and liberty of action which is its right as an international institution.

*Liberty of action of the WMO*

### ARTICLE 2

The Swiss Federal Council recognizes the international character and judicial capacity in Switzerland of the World Meteorological Organization.

*Character of WMO*

### ARTICLE 3

The World Meteorological Organization has the benefit of all immunities accorded the European Office of the United Nations. The privileges and facilities in respect of customs matters are accorded in conformity with the customs regulations of the Federal Council, applicable to international organizations.

*Immunities of WMO*

### ARTICLE 4

Extra-territoriality of the grounds and premises

The Swiss Federal Council especially recognizes the extra-territoriality of the grounds and premises of the World Meteorological Organization and all the premises occupied by it on the occasion of its assemblies and of all other meetings convened by it in Switzerland.

### ARTICLE 5

Freedom of reunion

The Swiss Federal Council recognizes the right of the World Meteorological Organization and its Members, in their relations with it, to complete freedom of reunion including freedom of discussion and decision.

### ARTICLE 6

Immunity from jurisdiction and immunity with regard to other measures

1. The World Meteorological Organization has the benefit of immunity for itself, its properties and goods, wherever they may be or whoever may be in charge of them, with regard to all legal action, except in so far as this immunity shall have been formally waived by the Secretary-General of the World Meteorological Organization or his officially accredited representative.

2. The properties and goods of the World Meteorological Organization, wherever they may be and whoever may be in charge of them, benefit from immunity with regard to all measures of search, requisition, confiscation, expropriation and all other forms of seizure or interference by any public authority, of whatever kind it may be.

### ARTICLE 7

Inviolability of grounds and premises

The grounds and premises of the World Meteorological Organization are inviolable. No agent of the Swiss public authorities may enter therein without the express consent of the World Meteorological Organization.

### ARTICLE 8

Inviolability of the archives

The archives of the World Meteorological Organization and, in general, all documents belonging to it or in its possession, are inviolable.

### ARTICLE 9

Publications

The exportation and importation of the publications of the World Meteorological Organization will not be submitted to any prohibition or restrictions of an economic or financial nature.

### ARTICLE 10

Fiscal system of the WMO

The World Meteorological Organization is exempt from direct and indirect taxation, federal, cantonal, and communal, on the buildings of which it is owner or tenant and which are occupied by its services, as well as on its movable property, with the understanding that it will not seek the exemption of charges relating to services provided by public authorities.

### ARTICLE 11

Free access to funds

1. The World Meteorological Organization may receive and retain any funds of any sort, all currencies, legal tender and other transferable securities, and have free access thereto within Switzerland as well as in its relations with other countries.

2. The present Article is applicable to Member States in their relations with the World Meteorological Organization.

### ARTICLE 12

Official communications

The World Meteorological Organization has the benefit of treatment for its official communications which is at least as favourable as that accorded the European Office of the United Nations.

196     AGREEMENT BETWEEN THE SWISS FEDERAL COUNCIL AND THE WMO

### ARTICLE 13

Exemption from censorship

No censorship may be exercised in regard to official communications duly authenticated by the World Meteorological Organization, whatever the channel of communication employed.

### ARTICLE 14

Freedom of entrance and sojournment

1. The Swiss Authorities will adopt all measures necessary to facilitate the entry onto Swiss territory, the sojourn on this territory and the exit therefrom of all persons called upon in an official capacity to present themselves at the World Meteorological Organization; that is to say:

   (a) The representatives of Members, whatever may be the relations existing between Switzerland and these States;

   (b) Members of the Executive Committee of the World Meteorological Organization, whatever their nationality;

   (c) Non-Swiss staff members of the World Meteorological Organization;

   (d) Persons summoned by the World Meteorological Organization, whatever their nationality.

2. All measures concerning the "police des étrangers" and aimed at restricting the entry into Switzerland of foreigners, or of controlling the conditions of their stay, will not be applicable in so far as concerns the persons covered by the present Article.

### ARTICLE 15

Immunities of representatives of Members and of the Executive Committee

Representatives of Members of the World Meteorological Organization and members of its Executive Committee called to Switzerland on account of their functions enjoy there the same privileges and immunities as those accorded the representatives of Members of the United Nations Organization. The privileges and facilities in respect of customs matters are accorded in conformity with the customs regulations of the Federal Council applicable to international organizations.

AGREEMENT BETWEEN THE SWISS FEDERAL COUNCIL AND THE WMO     197

### ARTICLE 16

Diplomatic immunities of the Secretary-General and of certain staff members

1. The Secretary-General of the World Meteorological Organization and the senior staff members of the categories designated by him and approved by the Swiss Federal Council, enjoy the privileges, immunities, exemptions and facilities recognized for diplomatic representatives in conformity with international law and practices.

2. The privileges and facilities in respect of customs matters are accorded in conformity with the customs regulations of the Federal Council applicable to international organizations.

### ARTICLE 17

Immunities and facilities accorded to all staff members

All staff members of the World Meteorological Organization, whatever their nationality, have the benefit of the following facilities and immunities:

(a) Exemption from all jurisdiction for acts resulting from the exercise of their functions;

(b) Exemption from all federal, cantonal and communal taxes on the salaries, emoluments and indemnities which they receive from the World Meteorological Organization.

### ARTICLE 18

Exemptions and facilities accorded to non-Swiss staff members

Staff Members of the World Meteorological Organization who are not of Swiss nationality have the benefit of the exemptions and facilities enumerated in the plan for the execution of the present agreement. The privileges and facilities in respect of customs matters are accorded in conformity with the customs regulations of the Federal Council applicable to international organizations.

198    AGREEMENT BETWEEN THE SWISS FEDERAL COUNCIL AND THE WMO

### ARTICLE 19

Pension fund, etc.

1. Any pension fund or provident society officially active on behalf of staff members of the World Meteorological Organization will be legally recognized in Switzerland, if it expresses the desire to be so, and will, in so far as its activity is on behalf of the said staff members, have the benefit of the same exemptions, immunities and privileges as the Organization itself.

2. The funds and foundations, whether possessing a proper legal character or not, administered under the auspices of the World Meteorological Organization and allotted to its official uses, have the benefit of the same exemptions, immunities and privileges as the Organization itself, so far as their movables are concerned.

### ARTICLE 20

Objection of the immunities

The immunities provided for in the present agreement have not been established with a view to according personal advantages and facilities to the staff members of the World Meteorological Organization. They have been instituted solely in order to ensure the free functioning under all circumstances of the World Meteorological Organization and the complete independence of its staff members.

Withdrawal of immunities

The Secretary-General of the World Meteorological Organization has the right and the duty to withdraw the immunity of a staff member when he considers that this immunity hinders the normal course of justice and it is possible to do so without menacing the interests of the World Meteorological Organization.

### ARTICLE 21

Prevention of abuse

The World Meteorological Organization will cooperate at all times with the Swiss authorities with a view to facilitating good administration of justice, ensuring the observation of police regulations and preventing abuse of the privileges, immunities and facilities provided for by the present agreement.

AGREEMENT BETWEEN THE SWISS FEDERAL COUNCIL AND THE WMO    199

### ARTICLE 22

Differences of a private nature

The World Meteorological Organization will make appropriate provisions for the satisfactory settlement:

(a) Of differences arising from contracts in which the World Meteorological Organization is a party, and other differences bearing on a point of civil law;

(b) Of differences in which a staff member of the World Meteorological Organization might be implicated, who enjoys immunity, as a result of his official position, if this immunity has not been withdrawn by the Secretary-General.

### ARTICLE 23

Non-responsibility of Switzerland

Switzerland does not incur, as a result of the activity of the World Meteorological Organization on its territory, any international responsibility of any kind for the acts or omissions of the Organization or of those of its staff members acting or failing to act in the execution of their duties.

### ARTICLE 24

Security of Switzerland

1. Nothing in the present agreement affects the right of the Swiss Federal Council to take any precautions necessary in the interests of the security of Switzerland.

2. In the event of it being considered necessary to apply the first paragraph of the present Article the Swiss Federal Council will get into contact with the World Meteorological Organization, as soon as circumstances permit, with a view to accepting, by common agreement, the measures necessary for the protection of the interests of the Organization.

3. The World Meteorological Organization will collaborate with the Swiss authorities in order to prevent any prejudicial effects upon the security of Switzerland, resulting from activity on the part of the Organization.

200   AGREEMENT BETWEEN THE SWISS FEDERAL COUNCIL AND THE WMO

### ARTICLE 25

Execution of the agreement by Switzerland

The Federal Political Department is charged with the plan of execution and the execution by the Swiss Confederation of the present agreement.

### ARTICLE 26

Jurisdiction

1. Any divergence of views concerning the application or interpretation of the present agreement, or of its plan of execution, which it shall not have been possible to settle by direct discussion between the parties, can be submitted by one or the other of the parties to the judgment of a tribunal composed of three members which will be formed upon the entry into force of the present agreement.

2. The Swiss Federal Council and the World Meteorological Organization will each choose one member of the tribunal.

3. The judges thus designated will choose their president.

4. In the event of disagreement between the judges on the question of the president, the latter will be designated by the President of the International Court of Justice, upon the request of the members of the tribunal.

5. Matters will be referred to the tribunal by one or the other party, in the form of a claim.

6. The tribunal will decide upon its own form of procedure.

### ARTICLE 27

Entry into force

The entry into force of the present agreement has been fixed, with retroactive effect, from the 20th of December 1951.

---

AGREEMENT BETWEEN THE SWISS FEDERAL COUNCIL AND THE WMO   201

### ARTICLE 28

Changes in the agreement

1. The present agreement can be revised upon request of one or the other party.

2. In such a case, the two parties will discuss which changes it might be necessary to make in the provisions of the present agreement.

3. In the event of the negotiations not terminating in an understanding within the delay of one year, the agreement can be denounced by one or the other party after a notice of two years.

### ARTICLE 29

Plan of execution

The provisions of the present agreement are completed by the plan of execution.

Done and signed in duplicate at the headquarters of the World Meteorological Organization in Geneva on the 10th of March 1955.

For the World Meteorological Organization:

G. SWOBODA

*Secretary-General*

For the Swiss Federal Council:

PIERRE MICHELI

*Chief of the International Organizations Division, Federal Political Department*

Exhibit 2

# Affidavit

Introduction :

I am asked to advise on the likelihood of a case involving a UN employee with a civil claim being taken up and addressed by the Swiss legal system.

I am a member of the Geneva bar, partner at Lalive Law firm, a specialist in the fields of international criminal law and public international law, and an acting judge at the Appeal Courts of Geneva. I have been retained by Ms. Veiga to advise her on Swiss legal matters.

I have read the pleadings and motion in US Federal District Court for the Southern District of New York case name: *Rosario Veiga v World Meteorological Organisation et al*, case Number:07-cv-3182, pleadings and notice of dismissal.

I note that the case has been dismissed on grounds of *forum non conveniens*, and supply this opinion for use in the motion of reconsideration.

My concern is that regarding the Plaintiff's civil complaint, there is no *forum conveniens* in Switzerland, due to the Defendants' immunity from civil suit in Switzerland. This may be explained with reference to the immunity enjoyed by the World Meteorological Organisation and its officials in Geneva, the reasons for which are set out herein.

This legal opinion discusses the scenario whereby an employee of the World Meteorological Organisation at Geneva (hereafter "WMO") lodges a case with the Geneva employment tribunal to advise them of a labour law dispute with the organisation.

The preliminary question for discussion is whether the World Meteorological Organisation could be brought before the Swiss Courts and moreover if it enjoys immunity of jurisdiction before the Swiss Courts.

According to accepted jurisprudence before the Swiss Federal Tribunal,

*"Immunity of jurisdiction of international organisations does not derive directly from their international legal personality. Not being the plenary subjects of international law, in contrast with States, these organisations always derive their immunity from an instrument of public international law, whether by multilateral conventions between states members of an organisation or by bilateral accords, seat agreements with the host State are of the first order"* (see particularly ATF 118 (1992) Ib 562, c. 1a)

In this instance, the relations between the World Meteorological Organisation and Switzerland are regulated by the Headquarters Agreement of 10 March 1955 between Switzerland and the World Meteorological Organisation[1]

---

[1] 0.192.120.242 concluded 10 March 1955, approved by the Federal Assembly on 29 September 1955, entered into force with effect from 20 December 1951.

1

Article 3 of this Agreement of 10 March 1955 between the Swiss Federal Council and the WMO which controls the legal Statute of this Organisation in Switzerland and provides for its immunity with regard to Switzerland its legal system[2].

Furthermore, Article 6 of this Agreement "Immunity of jurisdiction and immunity with regard to other measures" completes Article 3 of the Agreement on the question of the execution of the immunity of the WMO:

1. *The International Meteorological Organisation has the benefit of immunity for itself, its properties and goods, wherever they may be or whoever they may be or whoever may be in charge of them, with regard to all legal action, except in so far as this immunity shall have been formally waived by the Secretary-General of the World Meteorological Organisation, or his officially accredited representative.*

2. *The properties and goods of the World Meteorological Organization, wherever they may be and by whomever may be in charge of them, benefit from immunity with regard to all measures of search, requisition, confiscation, expropriation and all other forms of seizure or interference by any public authority, whatever kind it may be."*

It should be noted that the Federal Tribunal has never, to this day, entered into the classic distinction between absolute and relative immunity, relevant where states are concerned.

In fact, for the Federal Tribunal:

*"International organisations benefit from an absolute and complete immunity, without any restriction. The principle of immunity is relatively established, in particular, by the European Convention on the immunity of States, (..) which only applies to States, the distinction between acts jure imperii and acts jure gestionis does not hold for international organisations ..." (ATF 118 (1992) lb 562, c 1a, Groupement d'Entreprises Fougerolles et consorts c. le CERN)*

To the knowledge of the undersigned, labour law disputes between the WMO and its staff are regulated by internal procedures and not by the Geneva Labour Law Tribunal, the canton of the seat of the Organisation.

In a case *A. v. League of the Arab States*, of 25 January 1999[3], concerning an employee of the Legal of Arab States attached to the Office of the United Nations at Geneva, the employee filed a claim with the Geneva Employment Tribunal although an avenue of appeal existed within the organisation. The Swiss Employment Tribunal declared itself incompetent due to the jurisdictional immunity invoked by the Organisation and the non-exhaustion, by the plaintiff, of the remedies which exist within the Arab League. The result was confirmed by the Appeal Chamber of the Employment Tribunal of Geneva, as well as by the Federal Swiss Tribunal, in an appeal of 25 January 1999.

The case is interesting because the Federal Tribunal revisits its jurisprudence of 1992, (applicable in relation to external reports of contractual enterprise), applicable to the internal law labour reports of the organisation.

---

[2] SR 0 192.120 282

[3] A case not officially published but partially reproduced in the Chronicle of Public International Law 1999 by Professor Caflisch and published in the Swiss Review of Public International Law and European Law, 2000, vol 10, pp. 642-5

In fact, according to the Federal Tribunal, the immunity granted to international organisations permits such international organisations to avoid the jurisdiction of the national courts on the condition that the international organisations:

*"undertake to the Host State, generally in the immunity agreement, to provide a means for the regulation of disputes arising out of contracts concluded with private persons. This obligation to provide an internal procedure of independent arbitration comprises the counterpart of the granted immunity This demand tends to guarantee access to justice for persons for whom cases are covered by the immunity of jurisdiction of the organisation."*

In fact, the Federal Tribunal does not even demand that the international organisation makes specific commitments to Switzerland regarding the internal regulation of disputes, provided that it has *de facto*, instituted its own procedures.

The Federal Tribunal again specifies that an international organisation:

*"benefits from an immunity of jurisdiction absolute and complete, with the reservation of the existence of an internal regulatory procedure with independent arbitrators shielded from the jurisdiction of the national tribunals."*

Then, the Federal Tribunal describes the internal procedure of the League of Arab States as it concerns labour law, concluding that:

*"for a plaintiff controlled by Arabia, which is the case in this instance, one may consider prima facie (...) that the Administrative Tribunal (of the League of Arab States) <u>guarantees the obtaining of an equitable legal decision.</u>"* (emphasis added).

This passage is relevant to the situation presented for our legal opinion because it does not exclude the possibility that the Federal Tribunal could hand down a decision rejecting the immunity of the Arab League if it was stated that the internal procedure was inequitable in *terms of accountability*. This opinion is moreover shared by the doctrine which is expressed on this issue[4].

However, *de lege lata*, one must admit that the current rule is that immunity applies where the international organisation has advised of an external or internal procedure of dispute resolution. This rule seems to be applied even more rigorously where a litigant with an organisation is an international functionary (as compared to a person recruited locally)[5].

I hereby state and declare under the pains and penalties of perjury that the foregoing is true to the best of my knowledge and belief.

Geneva, 4 May 2007

Dr Marc Henzelin

---

[4] See C Dominicé, The Swiss Statute of international governmental organisations, FJC, 1999, no 5 3.6 and 6.2.3.
[5] Dominicé, *op cit*, No. 6 2

3

Attorney At Law

Jurisprudence cited:

AFT 118 (1992) lb 562, c. 1a, in the matter of Grouping of Fougerolles Enterprises and consorts c. CERN.

Appeal of the Federal Tribunal of 25 January 1999, in the matter of A. C. League of Arab States, appeal partially published in RSDIE, 2000, vol. 10, pp. 642-645.