# MONIKA ONA BILERIS, ESQ.

605 WEST 112 STREET, #6J, NEW YORK, NEW YORK 10025
TEL: (917) 826-4588 ♦ FAX: (443) 587-0452

E-MAIL: MONIKA.BILERIS@GMAIL.COM

Hon. Victor Marrero
Suite 660
United States Courthouse
500 Pearl Street
New York, NY 10007

June 9, 2008

RE: *Veiga v. WMO et al.*, No. 07 CV 3182 (VM)

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-11-08
```

Dear Judge Marrero:

We are in receipt of your endorsement, filed on 22 May 2008 and attached to our letter to you in the above referenced matter dated 20 May 2008, in which the Court stated that it considered the letter and attachments of the WMO's so-called legal counsel to the Court dated 30 April 2008 as a motion to dismiss for lack of subject matter jurisdiction, and instructed the Plaintiff to respond by letter to such motion by 10 June 2008.

The Plaintiff respectfully opposes the Defendant's Motion to Dismiss as follows:

## PRELIMINARY STATEMENT

While this action indeed arises out of the employment of the Plaintiff by a specialized agency of the United Nations ("UN") known as the World Meteorological Organisation ("WMO"), the claims she asserts concern matters far beyond a simple workplace dispute as portrayed by the Defendant. The Defendant in its motion (presumed to be pursuant to F.R.C.P. 12(b)(1)) asserts that the complaint must be dismissed on the basis that the WMO is immune from all legal process and suit under international laws and the laws of the United States, and that its officials similarly enjoy such privileges and immunities "as are necessary for the independent exercise of their functions in connection with the organization".

The Plaintiff counters, as will be further elaborated below, that the sources of law relied upon by the WMO in its motion as the source of the Defendants' alleged immunity from all legal process and suit violate the rights and privileges guaranteed to the Plaintiffs under the 1st, 5th, 7th and 14th Amendments to the US Constitution.

### Standard of Review

When presented with a motion to dismiss for lack of jurisdiction under FRCP 12(b)(1), the Court must accept as true all material factual allegations in the complaint, but it will not be required to

draw inferences from the complaint favorable to the Plaintiffs. It may also consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue. *J.S. v. Attica Cent. Schs.*, 386 F.3d 107 (2d Cir. 2004). Accordingly, the Plaintiffs have attached an appendix hereto to counter the Defendants' assertion of immunity, and to make the record.

## STATEMENT OF THE CASE

### A. FACTS

The complaint asserts a number of common law claims that existed at the time of the adoption of the US Constitution (breach of contract/constructive termination, intentional affliction of emotional distress) as well as several claims created more recently by Congressional action (racketeering and conspiracy claims under Civil RICO). The complaint was brought pursuant to the Alien Tort Claims Act.

The facts giving rise to the Plaintiff's claims are set out in the complaint.

### B. WMO Immunity from Suit and Process in the United States

Putting aside for a moment the International Organizations Immunities Act ("IOIA", codified at 22 USC §288 *et seq.*) and its constitutionality (discussed in further detail below), the Defendant's reliance on the Convention on the Privileges and Immunities of Specialized Agencies of 1947 is misplaced. The US has never acceded or ratified such Convention. Additionally, the WMO's assertion that the Covention of the WMO adopted on 22 September 1947 and ratified by the US on 4 May 1949 is sufficient to grant the Defendants immunity from suit of process is also inapposite. The Section 27[i] expressly cited by the WMO further provides that at section (c) that the said privileges and immunities "shall be defined in a separate agreement to be prepared ...and concluded between the Members which are States". To the knowledge of the Plaintiff, no such agreement has been concluded with the United States. Accordingly, in line with the recently decided *Medellin v. Texas* (552 US___[2008]), the Convention establishing the WMO is not an acknowledgement that the privileges and immunities of the WMO and its officials will have immediate legal effect in the courts of WMO members, but rather a commitment on the part of WMO members to take future action through their political branches and in negotiations with the WMO to give effect to the privileges and immunities referenced in Article 27 of the WMO Convention. Therefore, the only basis for WMO's asserted immunity in the US is through the IOIA. Moreover, "the question of immunity from legal process under treaties and statutes of the United States lies within the province of the courts...." *Shamsee v. Shamsee et al.*, 74 AD 2d 357, 360 (1980).

### C. The WMO and ILOAT's so-called Internal Dispute Resolution Mechanism

In his letter to the Court, the WMO's legal counsel makes reference to the Plaintiff's resort to the International Labour Office Administrative Tribunal (ILOAT), and asserts that this is an adequate alternative forum for the Plaintiff's claims. Although such resort was procedurally necessary so that the Plaintiff may bring a separate and unrelated claim against the Government of Switzerland before the European Court of Human Rights alleging a violation of her rights under the European Convention on Human Rights *by Switzerland*, the ILOAT is not a proper forum for the Plaintiff's claims (the ILOAT deals with "administrative claims", not tort claims). In addition, noted human rights lawyer and UN Sierra Leone War Crimes Tribunal Judge Geoffrey Robertson, in an opinion he prepared for the ILO Staff Union in November 2002, identified several breaches of fundamental human rights principles in the way ILOAT is constituted and operated, which rights "have a **jus cogens** quality, and

2

should therefore be a defining characteristic of every international judicial body" (see Appendix 1, and Endnote xii)[ii]. Accordingly, the Plaintiff submits that the ILOAT is a grossly inadequate forum for the Plaintiff's claims.

### D. Defendant's Assertion that attribution of Functional Immunity to the WMO is an essential means of ensuring the proper functioning of such organisations

The Plaintiffs can only lament the fact that the current state of U.S. law, as applied by most American courts faced with an action against an international organization such as the WMO purporting to enjoy immunity from suit or process, supports the assertion of the Defendant.[iii] The Plaintiff takes solace in the fact that as far as her research reveals, few if any litigants against the international organizations have asserted in U.S. Courts that such privileges and immunities violate their constitutional rights as the Plaintiff now does.[iv]

Taken to its logical conclusion, the Defendant's assertion that alleged wrongful acts on the part of international organizations or their officials would lead to the absolute bar of criminal action or resulting civil process even in the case where a international organisation official commits rape or murder in his or her office on US soil. Plaintiff does not accept that the Founders would have countenanced such a result at the time of the adoption of the Constitution[v]. Of course, the Founders were not faced with this issue as the question of the nature and extent of their privileges and immunities has only arisen since the creation of the first international organizations in the late 19th and early 20th centuries.

The Plaintiff asserts that Congress and the Courts have often conflated legitimate diplomatic and sovereign state immunities (which existed prior to the adoption of the U.S. Constitution and were arguably incorporated as part of Federal common law) with the alleged immunity of international organizations and their officials, which immunities contested herein appear to have been crafted out of thin air during the last century[vi].

It is clear that the application of the asserted immunity will indeed deprive the Plaintiff her right of access to any American court, and given the deficient nature of the internal WMO/ILOAT dispute resolution mechanism (see Appendix 1), such denial is tantamount to a complete denial of justice for the Plaintiff. That alone should be reason enough for this Honorable Court to deny the Defendant's motion to dismiss.

### ARGUMENT

### I. Dismissal of this action on the basis of the Defendants' immunity, whatever its sources, will violate the Plaintiffs' fundamental rights under the U.S. Constitution found in the 1st, 5th, 7th and 14th[vii] Amendments.

In *Reid v. Covert*, 354 US 1, 14 (1957), the Court said "[t]he concept that the Bill of Rights and other constitutional protections against arbitrary government are inoperative when they become inconvenient or when expediency dictates is a very dangerous doctrine and if allowed to flourish would destroy the benefit of a written Constitution and undermine the basis of our Government. If our foreign commitments become of such nature that the Government can no longer satisfactorily operate within the bounds laid down by the Constitution, that instrument can be amended by the method which it prescribes. But we have no authority, or inclination, to read exceptions into it which are not there".

3

Were the Defendant's motion to succeed, the Plaintiffs will be denied their constitutional protections by operation of a Congressional statute or treaty.

Article VI, the Supremacy Clause of the Constitution, states that "[t]his Constitution, and the Laws of the United States which shall be made in pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land...." The Court in *Reid* found nothing in this language, nor in the history or debates surrounding its adoption to suggest that treaties and laws enacted pursuant to them can escape the dictates of the Constitution. *Id.*, at 16. Rather, it concluded, "[i]t would be manifestly contrary to the objectives of those who were responsible for the Bill of Rights – let alone alien to our entire constitutional history and tradition – to construe Article VI as permitting the United States to exercise power under an international agreement without observing constitutional prohibitions". *Id.* The essence of the Defendant's motion is that the IOIA is superior to the US Constitution and the Bill of Rights.

### A. The Immunities asserted by the Defendants, if applied, will deny the Plaintiff herdue process rights under the 5th and 14th Amendments by abridging her right to an opportunity for a hearing on the merits of their cause before this Court.

U.S. courts have traditionally held that the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property[viii] or as plaintiffs attempting to redress grievances. The property component of the 5th Amendment imposes a constitutional limitation upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause. *Societe Internationale v. Rogers*, 357 US 197, 209 (1958).

Although the Supreme Court never reached the question, it stated in dicta that it "perhaps may be doubted whether the state could abolish all rights of action, on the one hand, or all defenses, on the other, without setting up something adequate in their stead". *New York C.R.R Co. v. White*, 243 US, 188, 201 (1917). Nonetheless, such a requirement may be deduced from the Court's ruling in *Duke Power v. Carolina Env. Study Group*, 438 US 59, 93 (1978), which, in relying upon the logic of New York Central, found that a statute which created a "panoply of remedies and guarantees" was at least a reasonably just substitute for the common-law rights also abolished by the same statute, finding nothing more was required by the Due Process Clause.

The IOIA relied upon by the Defendants as the basis for its motion in fact abolishes all rights of action and remedies against the Defendants, but provides no reasonably just substitute to the Plaintiff. For that reason, the Plaintiff respectfully submits to this Court that granting the Defendants' motion will deprive the Plaintiff of her constitutionally guaranteed right to procedural due process under the 5th and 14th Amendments, in particular, a hearing on the merits of her damage claims.

### B. The Immunities asserted by the Defendants, if applied, will deny the Plaintifs her substantive due process rights under the 5th and 14th Amendments by denying her access to this Court.

A litigant's access to U.S. courts in order to claim the protection of laws is the essence of American civil liberty, and finds its robust origins in *Marbury v. Madison*, 1 US 137, 163-165 (1785)[ix]. And the gate keeper of the civil liberty enshrined in *Marbury* (and indeed a fundamental right on its own) is the thousand year-old tradition of access to a meaningful justice system, enunciated by the

4

Court in *Boddie v. Connecticut*, 401 US 371, 380-381 (1971), by what appears to be the genesis for a general rule of access to the Courts under the Due Process Clauses of the 5th and 14th Amendments.

The 5th Amendment contains a substantive as well as a procedural liberty interest in due process. *Griswold v. Connecticut*, 381, US 479, 492-493 (1965, Goldberg, J., concurring). This is also true of the 14th Amendment. *Id.* The liberty interests accorded strongest protection under substantive due process are those found to be fundamental. *Zablocki v. Redhail*, 434 US 374, 386-87 (1978). To determine whether a liberty interest is fundamental, the Court must examine whether the asserted right is deeply rooted in our history, traditions, and evolving collective conscience such that it is implicit in the Anglo-American concept of ordered liberty. *Griswold, Id.*, at 487, *Moore v. City of East Cleveland*, 431 US 494, 503-04 (1977).

The Supreme Court in *Powell v State of Alabama*, 287 US 45, 68 (1932) held that "notice and hearing were the preliminary steps to passing an enforceable judgment, and that they, together with a legally competent tribunal having jurisdiction of the case, constitute basic elements of the constitutional requirement of due process". In *Holden v. Hardy*, 169 US 366, 389, the Court found "the necessity of due notice and an opportunity of being heard is described among the 'immutable principles of justice which inhere in the very idea of free government which no member of the Union may disregard'".

The Plaintiffs respectfully submit to this Honorable Court that the right of a litigant to be heard before a competent tribunal in a case for damages is indeed so entrenched in American culture as to be implicit in our concept of ordered liberty, and that such right must be deemed "fundamental". The Supreme Court recently declared the right of access to courts indeed fundamental. *Tennessee v. Lane*, 541 US 509, 533-34 (2204). Accordingly, the Court is urged to apply a "strict scrutiny" standard in its analysis. *Zablocki, Id.*, at 386-87.

Such an analysis, the Plaintiffs assert, will find that the IOIA, which grants the Defendant WMO absolute immunity, and the individual Defendant WMO officials, as a practical matter, near blanket immunity, fail to address an essential aspect of the presumed compelling government interest and thus impermissibly under-inclusive[x]. Moreover, the means employed to implement such interest in ensuring the proper, lawful functioning and independence of the WMO is not the least restrictive means available. Congress could have easily passed a statute similar to the Federal Tort Claims Act (FTCA, 28 USC §1346(b))[xi], or mandated that third party claims or employee suits against the Defendant WMO be addressed in an <u>independent</u>[xii], alternative dispute mechanism that embodies all the due process protections required by the US Constitution, similar to the internal dispute resolution system to which some Federal Government employees are now subjected (and which ultimately allows them access to Federal Court should they not be satisfied with the outcome of the internal dispute resolution mechanism). Civil Service Reform Act, 5 U.S.C. 7101, *et seq*.

Accordingly, the Plaintiff prays that this Court find that the application of Defendants' motion to dismiss would deprive her of substantive due process under the 5th and 14th Amendments, and deny said motion.

### C. The Plaintiff's right under the 1st Amendment to petition the Government for redress of grievances will be denied if the Defendants' motion to dismiss is allowed.

The Supreme Court has opined "...that the rights to assemble peaceably and to petition for a redress of grievances are among the most precious of liberties safeguarded by the Bill of Rights. These

5

rights, moreover, are intimately connected, both in origin and in purpose, with the other 1st Amendment rights of free speech and free press. 'All these, though not identical, are inseparable'". *Thomas v. Collins*, 323 US 516, 530 (1945), quoting *Mine Workers v. Illinois State Bar Association*, 389 US 217 (1967). It had earlier held that the right to "vigorous advocacy, certainly of lawful ends, against government intrusion", is protected by the 1st Amendment. *NAACP v. Button*, 371 US 415, 416 (1963). It has also has long recognized that "The right to sue and defend in the Courts is the alternative to force. In an organized society, it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship...." *Chambers v. Balt. & Ohio R.R.*, 207 US 142, 148 (1907).

The 1st Amendment protections described above would however be a hollow promise if the Government could simply prevent their assertion or vindication by immunizing certain defendants from suit. Without such a legal system which that allows litigants such as Plaintiff herein with valid claims for damages to definitively settle their differences in an orderly and predictable manner pursuant to the rule of law, not only the Plaintiff herein but society as a whole will be hard pressed to reject what political theorists call the "state of nature". *Boddie v. Connecticut*, 401 US 371, 374 (1971).

In the present case, should the Court grant the Defendant's motion on the basis of the claimed immunities, the Plaintiffs will be deprived of her right to petition the Government for a redress of their clear and articulated grievances against the Defendant. For that reason, the Plaintiff requests the Court to deny the subject motion to dismiss.

### D. The dismissal of this action will violate the Plaintiff's 7th Amendment right to a trial by jury.

To enjoy the protection of the 7th Amendment, a lawsuit must assert a claim that would have triggered the right to a jury trial under the English common law of 1791, when the 7th Amendment was ratified. If a lawsuit asserts a claim that is sufficiently analogous to an eighteenth-century English common-law claim, a litigant may still invoke the right to a jury trial even though the claim was not expressly recognized in 1791. *Markman v. Westview Instruments*, 517 U.S.370, (1996). Claims brought under a federal statute that confer a right to trial by jury also implicate the 7th Amendment. *Chauffeurs, Teamsters et al. v. Terry*, 494 U.S. 558, (1990).

All of the Plaintiff's claims in the complaint either existed as common law actions (intentional infliction of emotional distress, breach of contract/constructive termination) at the time of the adoption of the 7th Amendment, or otherwise, while subsequently created by Federal statute (racketeering influenced corrupt organization civil claims [RICO]), nonetheless provide for trial by jury.

Accordingly, the Plaintiff respectfully submits that the allowance of Defendant's motion to dismiss will deny the Plaintiff her 7th Amendment right to a trial by jury, and for that reason, pray that this Honorable Court dismiss said motion.

### E. At best, WMO and its officials are entitled to the immunity, if any, afforded municipal corporations

As the WMO is not a sovereign state nor a political subdivision of an individual sovereign government, it is at best equivalent by analogy to a municipal corporation. As a general rule, it was understood that a municipal corporation's tort liability in damages was identical to that of

6

private corporations and individuals. *Owen v. City of Independence*, 445 US 622, 640 (1980). Accordingly, the Plaintiff respectfully submits to the Court that the attempt to assign the WMO and its officials absolute and/or functional immunity under the IOIA is a mistake of fact entitling the Plaintiff to her requested relief.

## II. The immunities asserted by the Defendant United Nations violate the International Covenant on Civil and Political Rights which is binding upon the United States.

The Plaintiff finally asserts that that the IOIA, if applied in the present case to allow the dismissal of the Plaintiff's action, would violate the International Covenant on Civil and Political Rights, Article 2, Section 3. 999 UNTS 171, 6 ILM 368 (1966) to which the US is a party, by failing to grant the Plaintiff an effective remedy for herdamage claims which assert several human rights claims against the Defendants.

For that reason, the Plaintiff requests that this Honorable Court deny the said motion.

### Conclusion

For all the foregoing reasons, the Plaintiffs respectfully urge this Honorable Court to deny the Defendant's motion to dismiss, and to allow the case to proceed in accordance with the Federal Rules of Civil Procedure.

Respectfully submitted,

Monika Ona Bileris, Esq.
212 West 104 Street, 4D
New York, New York 10025
917-826-4588

Edward Patrick Flaherty, Esq.
cp 510
CH-1211 Geneva 17, Switzerland
4122 840 5000

CC:   WMO/UN Liaison Office
      Serrin Turner, Assistant United States Attorney

---

[i] **ARTICLE 27**
   (c) Such legal capacity, privileges, and immunities shall be defined in a separate agreement to be prepared by the Organization in consultation with the Secretary General of the United Nations and concluded between the Members which are States.

[ii] Which opinion can be found at: http://www.ilo.org/public/english/staffun/info/iloat/robertson.htm

[iii] The Plaintiff notes that the Defendants' assertion of absolute immunity for the Defendant WMO, and as a practical matter, for the individual WMO Defendants as well because their alleged tortuous acts occurred in the context of an employment relationship, is contrary to "the prevailing law" in the United States of the "restrictive theory" of sovereign immunity. ALI, Restatement (Second) Foreign Relations Law of the United States, 69 (1965). Indeed since 1952, the US Dept of State has adhered to the position that the commercial and private activities of foreign states do not give rise to immunity (citing the so-called "Tate Letter"). *Dunhill of London Inc, v. Cuba*, 425 US 682, 698, and Appendix 2 thereto (1976). The Plaintiff asserts that the individual Defendants' tortuous behavior, which in her opinion was neither official or functional, must be ultimately reviewed by this Court to see to what degree of immunity, if any, it is entitled.

[iv] Moreover, it appears that many scholars and other commentators reject the superior doctrine of state sovereign immunity from which the immunities of the Defendant asserted in its motion are presumably replicated. See Amar, *Of Sovereignty*

7

*and Federalism,* 96 Yale L.J. 1425, 1427, 1489-90 (1987) (arguing that immunity from liability "conflicts with the Constitution's structural principle of full remedies for violations of legal rights against government", insisting that it is simply not part of our Constitution's structure); Erwein Chmerinsky, *Against Sovereign Immunity,* 53 Stanford Law Rev 1201, 1201 (2001) (suggesting that "[s]overeign immunity is an anachronistic relic [that] should be eliminated from American law" and that the doctrine "is inconsistent with the US Constitution"); and Vicky C. Jackson, *Suing the Federal Government: Sovereignty, Immunity and Judicial Independence,* 35 Geo. Wash. Int'l L. Rev. 521, 521-23 (2003) (arguing that "more restrictive undertakings of sovereign immunity of courts' capacities to provide individual justice" and the doctrine's likely incompatibility with the Bill of Rights, and also noting that the federal sovereign immunity is "nowhere explicitly set forth in the Constitution").

[v] A N.Y. state trial court opined "for the Court to recognize the existence of a general and unrestricted immunity over suits and transactions, as proposed by the defendant, would be to establish a large class of people within our borders who would be immune to punishment in as much as the United Nations has no tribunal for the control and punishment of defendants among its personnel. It can at best expel or eject them from the Headquarters District and such persons would escape trial and punishment completely. Such blanket immunity is contrary to our sense of justice and cannot be supported by any reference to the United Nations Charter, Acts of Congress or executive orders of the President." *People of New York v. Coumatos*, 224 NYS 2d 507, 512 (1962). Finally, a companion Court held that "[a]ny such theory [of immunity] does violence to and is repugnant to the American sense of fairness and justice and flouts the very basic principle of the United Nations itself, which in the preamble of its Charter affirms that it is created to give substance to the principle that the rights of all men and women are equal." *County of Westchester v. Ranollo,* 67 NYS 2d 31, 54 (1946). Notwithstanding the foregoing, see the US Dept of State Protocol Staff Statistics, Appendix 6 which evidences more than 50,000 persons in the United States as of 15 March 1996 having some form of immunity of US laws on account of their affiliation with the UN or other international organisations. The Plaintiffs' counsel have requested the most recent Staffing Statistics from the US State Dept. through a FOIA request, but have received no response to date, but presume the number of persons enjoying such immunity within the US is substantially greater today than in 1996.

[vi] WMO is not a sovereign state, nor therefore, can its officials be deemed "diplomatic envoys" of a sovereign state.

[vii] Plaintiff also believes that the granting of the Defendant's motion to dismiss on the basis of the asserted immunities will violate her right to equal protection under the 5th and 14th Amendments.

[viii] As was made clear by the Court in *Mullane v. Central Hanover Bank and Trust Co.*, 339 US 306, 313, a cause of action is a species of property protected by the Due Process Clause.

[ix] "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection.
…The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.
Whatever the practice on particular occasions may be, the theory of this principle will certainly never be maintained. No act of the legislature confers so extraordinary a privilege, nor can it derive countenance from the doctrines of the common law. After stating that personal injury from the king to a subject is presumed to be impossible, Blackstone, Vol. III. p. 255, says, 'but injuries to the rights of property can scarcely be committed by the crown without the intervention of its officers: for whom, the law, in matters of right, entertains no respect or delicacy; but furnishes various methods of detecting the errors and misconduct of those agents by whom the king has been deceived and induced to do a temporary injustice.'"

[x] The asserted immunities arguably have the opposite effect to encouraging the good governance of the WMO. Sovereign states under current doctrines of jurisdictional immunity are free to brutalize whom they please within their own territory, with little fear of accountability for such impunity. It would be a grave mistake to send the WMO and its officials the message that they can now enjoy the same freedom to act with impunity within their own sphere, particularly as some staff will develop an arrogant sense of being above the law. And there is already abundant evidence that the international organisations in the UN system have systematically abused their immunities in the employment area to date.

[xi] It does not seem rational to the Plaintiff that Congress would have intended to grant the Defendant WMO or its officials protection from suit or process greater than it has allowed itself, the President, and employees of the Federal Government under the FTCA, nor indeed necessary. If the U.S. Government can function reasonably well under the constraints of the FTCA, the Plaintiff respectfully submits that such a constraint placed on the Defendant UN would no more adversely affect its proper functioning and independence.

[xii] The current internal dispute resolution mechanism of the Defendant WMO is neither independent, nor does it meet the minimum due process requirements for an alternative arbitration system that the Supreme Court set down in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 US 20, 30-33 (1991)—see Appendix 1, Annex 6, Appendix 2, and Appendix 5.

> The Clerk of Court is directed to enter this communication into the public docket of this action.
>
> SO ORDERED:
> 6-10-08
> DATE                    VICTOR MARRERO, U.S.D.J.

8